UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


People's United Bank

   v.                                              Civil No. 11-cv-393-LM

Mountain Home Developers of
Sunapee, LLC; Dana Michael
Stevens, Charles Terry Finch,
Robert Flanders, Gary Williams,
Gina Williams, and Bardon Flanders


**O R D E R**

   People's United Bank ("PU Bank"), as mortgagee, seeks to recover the difference between the amount it realized from a foreclosure sale and the amount defendants (hereinafter "Mountain Home"), as mortgagors, still owe on loans made to them by PU Bank's predecessor in interest, Butler Bank ("Butler"). Mountain Home has asserted counterclaims for breach of the fiduciary duties of good faith and due diligence (Count I), breach of contract and/or the requirements of N.H. Rev. Stat. Ann. ("RSA") chapter 479 (Count II), and negligence (Count III). Before the court is PU Bank's motion to dismiss Mountain Home's counterclaims. Mountain Home objects. For the reasons that follow, PU Bank's motion to dismiss is granted in part and denied in part.

**The Legal Standard**

A motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), requires the court to conduct a limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  That is, the complaint "must contain 'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the claims."  Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

When considering a motion to dismiss under Rule 12(b)(6), a trial court "accept[s] as true all well-pled facts in the complaint and draw[s] all reasonable inferences in favor of plaintiffs."  Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 771 (1st Cir. 2011) (quoting SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010)).  But, "naked assertions devoid of further factual enhancement need not be accepted."  Plumbers' Union, 632 F.3d at 771 (1st Cir. 2011) (quoting Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009)).  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  United Auto., Aero., Agric. Implement Workers of Am. Int'l Union v. Fortuño, 633 F.3d 37, 41

2

(1st Cir. 2011) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." United Auto. Workers, 633 F.3d at 40 (citation omitted). On the other hand, a Rule 12(b)(6) motion should be granted if "the facts, evaluated in [a] plaintiff-friendly manner, [do not] contain enough meat to support a reasonable expectation that an actionable claim may exist." Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir. 2008) (citations omitted). That is, "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Plumbers' Union, 632 F.3d at 771 (citation omitted).

## Background

Except as otherwise indicated, the following facts are drawn from Mountain Home's counterclaim. See Plumbers' Union, 632 F.3d at 771.

Mountain Home sought to develop a tract of land in Sunapee, New Hampshire, by building high-end duplexes. To finance the project, Mountain Home received two loans from Butler and gave

two promissory notes in return.  Later, Mountain Home entered into a forbearance agreement with Butler that may have involved a third promissory note.

On January 25, 2011, after it had succeeded to Butler's interests, PU Bank informed Mountain Home of its intent to foreclose on the property securing the notes due to Mountain Home's failure to repay the loans.  At the time of the foreclosure, Mountain Home had improved the property by constructing a building that housed two 2,000-square-foot condominium units, by paving more than 1,000 feet of roadways, and by installing underground electrical lines to some lots.

In preparation for the foreclosure sale, PU Bank retained an appraiser, MRA, Inc. ("MRA").  PU Bank asked MRA to appraise the property in two ways, as a development of duplex condominiums, and as a development of single-family homes.  MRA performed only the first appraisal, but noted that under the second approach, the property's appraised value would have been higher.  Mountain Home does not allege the value MRA placed on the property or how much more the property would have been worth if used for single-family homes.  Mountain Home does, however, allege that when it received a copy of the MRA appraisal, on a date it does not include in its factual allegations (but apparently before the foreclosure sale), it informed PU Bank that it disputed the value MRA placed on the property.  With

regard to the sale itself, PU Bank posted notice of the sale in The Union Leader, but, according to Mountain Home, did not post notice "in a newspaper within Sullivan County," Def.'s First Am. Answer & Countercls. (hereinafter "Answer") (doc. no. 12) ¶ 65. Mountain Home does not further define the phrase "within Sullivan county."

On May 4, 2011, PU Bank conducted a foreclosure sale, and in so doing, relied on the property value set forth in MRA's appraisal. The property was sold, to a buyer Mountain Home does not identify, for $650,000. According to PU Bank's complaint, as of the first week of August 2011, i.e., three months after the foreclosure sale, Mountain Home still owed $678,997.17 in unpaid principal, $85,001.72 in accrued interest, $4,737.09 in late fees, and $87,594.19 in fees and expenses PU Bank incurred to collect from Mountain Home. See Compl. (doc. no. 1) ¶¶ 23-26. In its Answer, Mountain Home does not dispute that some amount of unpaid principal and interest remained after the sale, but only denies the accuracy of the amounts alleged in PU Bank's complaint. See Answer ¶¶ 23-24.

Based on the foregoing, Mountain Home asserts that PU Bank is liable for: (1) breach of fiduciary duty, because it failed to conduct the foreclosure sale with good faith and due diligence; (2) breach of contract, because it failed to provide notice of the sale in accordance with RSA 479:25, I; and (3)

negligence, because it "obtain[ed] an appraisal that it knew or should have known [to be] undervalued and incomplete," Answer (doc. no. 12) ¶ 87.

**Discussion**

PU Bank moves to dismiss all three of Mountain Home's counterclaims. It argues that: (1) all three are barred by RSA 479:25, II; (2) Count I must be dismissed because Mountain Home has not alleged the elements of bad faith; and (3) Count III must be dismissed because the negligence claim stated therein duplicates the claim for breach of fiduciary duty stated in Count I. Mountain Home disagrees, categorically. The court considers each of Mountain Home's three claims in turn.

A. Count I

In Count I of its counterclaim, Mountain Home asserts that PU Bank breached its fiduciary duties of good faith and due diligence by failing to: (1) obtain a full and accurate appraisal of the property; (2) advertise the auction in a manner that would attract a suitable collection of bidders; (3) set a sufficient strike price; and (4) purchase the property when the auction failed to meet or exceed a sufficient strike price. PU Bank argues that Count I should be dismissed because the claims stated therein are based on conduct that Mountain Home knew about before the sale, and RSA 479:25, II, provides that claims

based on such conduct are barred if they are not brought in the superior court in an action to enjoin the sale. PU Bank also argues that Mountain Home has not alleged facts sufficient to establish bad faith, which is necessary to establish breach of the fiduciary duty of good faith. PU Bank does not, however, challenge Mountain Home's allegations concerning its claim for breach of the fiduciary duty of due diligence. Mountain Home contends that Count I is not barred by RSA 479:25, II, because: (1) it had three years to file its claims, under RSA 508:4; (2) PU Bank misreads RSA 479:25, II; (3) PU Bank's argument is foreclosed by Murphy v. Financial Development Corp., 126 N.H. 536 (1985).

This case involves the interplay between two partially overlapping sets of duties owed to a mortgagor by a mortgagee conducting a foreclosure sale. By statute, a mortgagee is required to provide notice of a foreclosure sale to the public in a specified manner, see RSA 479:25, I. In addition, notice must be served on the mortgagor:

> Notice of the sale as served on or mailed to the mortgagor shall include the following language:
>
> "You are hereby notified that you have a right to petition the superior court for the county in which the mortgaged premises are situated, with service upon the mortgagee, and upon such bond as the court may require, to enjoin the scheduled foreclosure sale." Failure to institute such petition and complete service upon the foreclosing party, or his agent, conducting the sale prior to sale shall

> thereafter bar any action or right of action of the
> mortgagor based on the validity of the foreclosure.[1]

RSA 479:25, II.

Duties are also imposed on a mortgagee by the common law, as described in Murphy.  In that case, the New Hampshire Supreme Court noted the "mortgagee's dual rule as seller and potential buyer at the foreclosure sale, and . . . the conflicting interests involved," 126 N.H. at 541 (citing Wheeler v. Slocinski, 82 N.H. 211, 214 (1926)), and then held that "[i]n his role as a seller, the mortgagee's duty of good faith and due diligence is essentially that of a fiduciary," id.  More specifically:

> A mortgagee . . . must exert every reasonable effort to obtain "a fair and reasonable price under the circumstances," Reconstruction Finance Corp. v. Faulkner, 101 N.H. 352, 361 (1958), even to the extent, if necessary, of adjourning the sale or of establishing "an upset price below which he will not accept any offer." Lakes Region Fin. Corp. v. Goodhue Boat Yard, Inc., 118 N.H. [103,] 107 [(1978)].
>
> What constitutes a fair price, or whether the mortgagee must establish an upset price, adjourn the sale, or make other reasonable efforts to assure a fair price, depends on the circumstances of each case. Inadequacy of price alone is not sufficient to demonstrate bad faith unless the price is so low as to shock the judicial conscience. Mueller v. Simmons, 634 S.W.2d 533, 536 (Mo. App. 1982); Rife v. Woolfolk,

---

[1] The court presumes that by using the phrase "validity of the foreclosure," the legislature intended to denote both the validity of a foreclosure and the validity of the resulting foreclosure sale.

> 289 S.E.2d 220, 223 (W. Va. 1982); Travelers Indem.
> Co. v. Heim, 352 N.W.2d 921, 923-24 ([Neb.] 1984).

Id. (parallel citation omitted).

In Murphy, mortgagors sued their mortgagees, who were also the successful bidders at the foreclosure sale.  See 126 N.H. at 539.  The mortgagors claimed that the mortgagees violated their fiduciary duties by purchasing the subject property at a price substantially below its fair-market value.  See id.  The mortgagees moved to dismiss, arguing that the mortgagors' claims were barred by RSA 479:25, II.  See id. at 539-40.  The New Hampshire Supreme Court disagreed:

> If we were to construe this provision as the [mortgagees] urge us to do, it would prevent a mortgagor from challenging the validity of a sale in a case where the only claimed unfairness or illegality occurred during the sale itself — unless the mortgagor had petitioned for an injunction before any grounds existed on which the injunction could be granted.  We will not construe a statute so as to produce such an illogical and unjust result.  State v. Howland, 125 N.H. 497, 500, 484 A.2d 1076, 1078 (1984).
>
> The only reasonable construction of the language in RSA 479:25, II relied upon by the [mortgagees] is that it bars any action based on facts which the mortgagor knew or should have known soon enough to reasonably permit the filing of a petition prior to the sale.

Murphy, 126 N.H. at 540.

PU Bank characterizes Count I as being based on its alleged failures to properly advertise the foreclosure sale and to obtain a proper appraisal in anticipation of that sale.  In PU

Bank's view, those are both facts that Mountain Home knew, or should have known, prior to the sale, thus obligating it to bring a pre-sale petition to enjoin the sale or lose its right to contest its validity. Mountain Home points out, correctly, that Count I also alleges that PU Bank breached its fiduciary duties by failing to set a sufficient strike price and by failing to purchase the property when the bidding did not reach a sufficient level. Those facts, obviously, could not have been known to Mountain Home before the sale. Consequently, RSA 479:25, II, does not bar Count I.

The fact that Count I is based on both pre-sale conduct and conduct at the sale raises an interesting legal question, *i.e.*, whether a mortgagor is precluded from supporting his or her claim for breach of fiduciary duty by proving pre-sale conduct. While there does not appear to be a New Hampshire case in which the state supreme court has directly addressed that question, indications are that pre-sale conduct may be used to support a claim for breach of fiduciary duty.

For example, in *Murphy*, in the context of determining that the mortgagees violated their duty of due diligence, the court observed that while the mortgagees "*did* comply with the statutory requirements of notice of the foreclosure sale, these efforts were not sufficient in this case to demonstrate due diligence," 126 N.H. at 543 (emphasis in the original). The

10

court went on to describe the notice given of both the originally scheduled sale and its postponement to a later date. See id.  As the court concluded: "That these efforts to advertise were ineffective is evidenced by the fact that no one, other than the [mortgagees], appeared at the sale to bid on the property."  Id.  Similarly, in First New Hampshire Mortgage Corp. v. Green, which also involved a claim for breach of the duty of due diligence, the New Hampshire Supreme Court upheld the trial court's determination that "the manner in which the plaintiff advertised this parcel actually discouraged potential bidders," 139 N.H. 321, 324 (1995), based on "evidence showing that the advertisements misrepresented the advantageous location of the . . . property," id.  Based on Murphy and First NH Mortgage, it does not appear that RSA 479:25, II, provides any basis for excising PU Bank's pre-sale conduct from Count I.

As noted, PU Bank also argues that Count I should be dismissed because Mountain Home has not alleged the elements of bad faith.  Mountain Home contends that, under the liberal pleading standards of the Federal Rules of Civil Procedure ("Federal Rules"), it has adequately stated a claim.  The court does not agree.

Regarding what constitutes bad faith, the New Hampshire Supreme Court has explained:

11

> We first note that "[t]he duties of good faith and due diligence are distinct . . . . One may be observed and not the other, and any inquiry as to their breach calls for a separate consideration of each." Wheeler v. Slocinski, 82 N.H. at 213. In order "to constitute bad faith there must be an intentional disregard of duty or a purpose to injure." Id. at 214.

Murphy, 126 N.H. at 541-42 (parallel citations omitted). In Murphy, the mortgagees: (1) provided minimal public notice of the foreclosure sale, which had been postponed from an earlier date, see id. at 543; (2) purchased the property themselves at a sale with no other bidders present, see id. at 539; (3) bought the property for an amount equal to the amount owed by the mortgagors, $27,000, see id.; (4) should have realized that the mortgagors' "equity in the property was at least $19,000," id. at 542; and (5) sold the property for $38,000 two days after purchasing it for $27,000, see id. at 539. Despite all that, the court ruled that "[t]here [was] insufficient evidence in the record to support the master's finding that the [mortgagees] acted in bad faith in failing to obtain a fair price for the [mortgagors'] property." Id. at 542.

Based on Murphy, it is evident that Mountain Home has failed to state a claim for breach of the fiduciary duty of good faith. In Murphy, the mortgagees purchased the property and made a large quick profit. Thus, they plainly benefitted from having no one to bid against at the foreclosure sale. Here,

12

Mountain Home makes no allegations concerning the bidding at the sale or who ultimately purchased the property.[2]  Thus, there is no foundation in Mountain Home's factual allegations to support a reasonable inference that PU Bank intentionally breached its duty to properly advertise the sale, in an effort to keep potential bidders away.  More importantly, the harm in Murphy was that the mortgagees sold the property at the foreclosure sale (to themselves) for a price that insured that they would be made whole, but did not protect the mortgagors' equity in the property.  126 N.H. at 543.  Here, Mountain Home does not allege that PU Bank was made whole by the price it received at the auction, and does not deny PU Bank's allegations that unpaid principal and interest remained after it collected the proceeds of the sale.  On the facts alleged or admitted by Mountain Home, both PU Bank and Mountain Home were left holding the bag when the property sold for only $650,000.  Thus, on the facts alleged, there is no logical basis for an assertion that PU Bank acted with an intent to injury Mountain Home; both emerged from the foreclosure sale in the hole.  That is, unlike the

---

[2] Mountain Home's assertion that PU Bank failed in its "obligation to purchase the property when the auction failed to meet or exceed a sufficient strike price," Answer (doc. no. 12) ¶ 73(d), seems to suggest that some party other than PU Bank purchased the property, but that assertion could also be read, at least somewhat plausibly, as alleging that PU Bank did purchase the property but breached its duty by purchasing it for an amount less than a sufficient strike price.

mortgagees in Murphy and First NH Mortgage, both of whom purchased the foreclosed properties at beneficial prices, PB Bank is not alleged to have benefitted in any way from the purportedly low price it received for the property.

Mountain Home attempts to stave off dismissal of the bad-faith portion of Count I by pointing out that it has alleged that PU Bank: (1) accepted a price so low as to shock the judicial conscience; (2) failed to obtain a full and accurate appraisal; and (3) failed to set a sufficient strike price. There are two problems with Mountain Home's argument. First, the conduct Mountain Home points to might support a claim that PU Bank failed to exercise due diligence, but it simply does not rise to the level of "an intentional disregard of duty or a purpose to injure," Murphy, 126 N.H. at 542 (citation omitted). Finally, Mountain Home gives no reason, much less a plausible one, why PU Bank would want to low-ball the value of the property or accept a price for it that was less than the amount it believed it was owed by Mountain Home.

Beyond that, the court observes that while Mountain Home describes the valuation PU Bank obtained from MRA as too low, it does so in a conclusory way, without alleging either of the two key facts: (1) the value MRA assigned to the property; and (2) the correct property value. Thus, there is no factual frame of reference from which it would even be possible to determine

whether the $650,000 realized from the auction was either too little or, more importantly, so little as to shock the judicial conscience.  See United Auto. Workers, 633 F.3d at 41 (requiring a complaint to offer more than labels or conclusions).

In sum, to the extent that Count I asserts a claim that PU Bank breached its fiduciary duty of good faith, that claim is dismissed.  While the court harbors doubts that Mountain Home could state a claim for breach of the duty of good faith, dismissal of that portion of Count I is without prejudice.  In any event, Count I also includes a claim that PU Bank breached its fiduciary duty of due diligence.  That portion of Count I remains fully in play, as it is not barred by RSA 479:25, II, for the reasons explained above, and PU Bank has mounted no other argument against it.

B. Count II

In Count II of its counterclaim, Mountain Home asserts that PU Bank breached the parties' mortgage agreements by failing to give public notice of the foreclosure sale in the manner required by RSA 479:25, I.  PU Bank argues that it is entitled to dismissal of Count II because Mountain Home did not petition the superior court to enjoin the sale, as required by RSA 479:25, II.  Mountain Home objects, contending that it "could not have known that the deficient notice by [PU Bank] negatively

affected the sale price until the foreclosure sale was actually conducted," Def.'s Obj. (doc. no. 16), at 6.  The court is not persuaded.

RSA 479:25, I, requires that notice of a foreclosure "sale shall be published once a week for 3 successive weeks in some newspaper of general circulation within the town or county in which the property is situated."  In its counterclaim, Mountain Home alleges: "On information and belief, [PU Bank] failed to post notice in a newspaper within Sullivan County.  Instead, notice was only posted through The Union Leader."  Answer (doc. no. 12) ¶ 65.

Unlike Count I, Count II is based exclusively on PU Bank's alleged failure to follow the statutory notice requirements.  Thus, the only thing Mountain Home challenges is the validity of the foreclosure.  That the alleged invalidity of the foreclosure resulted in damages that became measurable only after the sale, when the highest bid was too low to satisfy Mountain Home, is of no moment.  The bar imposed by RSA 479:25, II, is intended to require the correction of pre-sale defects before a sale takes place.  A mortgagor who lets such a defect pass, hoping that it will not harm the sale price, assumes the risk that the defect will have such an effect.  The purpose of the statute is to make sure that a proper sale takes place the first time, not to give mortgagors a trump card they can play after a sale price proves

to be unsatisfactory.  Because Mountain Home knew or should have known of the allegedly insufficient notice before the sale, it was obligated to petition the superior court before the sale, or lose its right to bring a claim based on RSA 479:25, I. Mountain Home did not petition the superior court to enjoin the sale.  Thus, PU Bank is entitled to dismissal of Count II of Mountain Home's counterclaim, with prejudice.  See Murphy, 126 N.H. at 540 ("RSA 479:25 . . . bars any action based on facts which the mortgagor knew or should have known soon enough to reasonably permit the filing of a petition prior to the sale").

In addition, it is far from clear that Mountain Home has even stated a claim that the notice given by PU Bank violated the statutory requirement.  RSA 479:25, I, prescribes publication in "some newspaper of general circulation within the town or county in which the property is situated."  The statute does not require notice in a newspaper published within the town or county in which the property is situated, but, rather, notice in a newspaper generally circulated in the requisite town or county.  Mountain Home alleges that PU Bank published notice in The Union Leader.  But, it does not allege that The Union Leader is not a newspaper of general circulation within Sunapee, New Hampshire, or Sullivan County.  For that reason, as well, PU Bank is entitled to dismissal of Count II.

### C. Count III

In Count III of its counterclaim, Mountain Home asserts that PU Bank is liable for negligence because it owed Mountain Home a duty to protect its equity and failed to do so by obtaining, and then relying on, an incomplete appraisal that undervalued the property. PU Bank argues that it is entitled to dismissal because: (1) Mountain Home knew about the appraisal before the sale, thus obligating it to raise any objection to PU Bank's reliance on that appraisal before the sale, pursuant to RSA 479:25, II; and (2) the negligence claim duplicates the claim for breach of fiduciary duty stated in Count I. As with Count II, Mountain Home contends that it could not have known that the improper appraisal would negatively affect the sale price until after the sale had been conducted. It further argues that under the Federal Rules, it is permitted to plead in the alternative.

Unlike PU Bank, the court is not troubled by Mountain Home's strategy of pleading in the alternative. On the other hand, the court agrees with PU Bank that Count III is barred by RSA 479:25, II, for the same reasons that Count II is barred. In its counterclaim, Mountain Home alleges that it received a copy of the appraisal and informed PU Bank of its belief that the property value in the appraisal was too low. Knowing that PU Bank would use the property value in the appraisal to inform

18

the way it conducted the auction, Mountain Home was on notice of the possibility that PU Bank's reliance on the appraisal might result in an invalid sale.  Yet, rather than going to court to enjoin the sale until PU Bank obtained an accurate appraisal, Mountain Home bided its time.  Because it had a remedy available to it, that by its statutory terms expired when the sale was conducted, Mountain Home is barred from bringing a stand-alone negligence claim based solely upon PU Bank's reliance on the MRA appraisal.  Accordingly, PU Bank is entitled to dismissal of Count III, with prejudice.  See Murphy, 126 N.H. at 540.

## Conclusion

   For the reasons described above, PU Bank's motion to dismiss, document no. 15, is granted in part and denied in part. Specifically: (1) the due-diligence claim in Count I remains; (2) the good-faith claim in Count I is dismissed, but without prejudice to Mountain Home's filing an amended counterclaim; (3) Counts II and III are both dismissed, with prejudice.

   SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

March 12, 2012

cc: Conrad WP Cascadden, Esq.
    Michael Brendan Doherty, Esq.
    Paul R. Kfoury, Sr., Esq.
    Daniel P. Luker, Esq.