**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Bad Paper, LLC

    v.                                    Civil No. 11-cv-393-LM
                                          Opinion No. 2013 DNH 067
Mountain Home Developers of
Sunapee, LLC; Dana Michael
Stevens; Charles Terry Finch;
Robert Flanders; Gary Williams;
Gina Williams; and Bardon Flanders


**O R D E R**

Bad Paper, LLC, as successor in interest to People's United
Bank ("PU Bank"), seeks to recover the difference between the
amount PU Bank realized from a foreclosure sale and the amount
defendants still owe on several promissory notes they gave to PU
Bank's predecessor in interest, Butler Bank ("Butler").  Two
defendants, Mountain Home Developers of Sunapee, LLC ("Mountain
Home") and Dana Stevens, have defaulted.  Before the court are:
(1) a motion for summary judgment filed by Bad Paper;[1] (2) a Rule
56(d) discovery motion filed by Charles Finch, Robert Flanders,
and Bardon Flanders ("the F/F defendants"); and (3) a Rule 15(d)
motion for leave to file a supplemental answer, also filed by
the F/F defendants.  Bad Paper's summary-judgment motion is

---

[1] Because default was entered against Mountain Home and
Stevens the day before Bad Paper filed its motion for summary
judgment, the court construes that motion, as it pertains to
Mountain Home and Stevens, as a motion for default judgment.

opposed by the F/F defendants but not by Gary and Gina Williams ("the Williams defendants").  The F/F defendants' two motions are opposed by Bad Paper.  For the reasons that follow, Bad Paper's motion for summary judgment is granted, the F/F defendants' two motions are denied, and the Williams defendants are ordered to show cause why the court should not grant Bad Paper summary judgment against them.

## Background

The following facts are drawn from Bad Paper's memorandum of law in support of its motion for summary judgment and are supported by appropriate record citations.  See LR 7.2(b)(1). The F/F defendants do not contest any of those facts in their objection to summary judgment.  Accordingly, the facts presented in Bad Paper's memorandum are deemed admitted.  See LR 7.2(b)(2).

In exchange for two loans and a forbearance agreement, Mountain Home and its principals, individually, executed and delivered three promissory notes (hereinafter the "Mountain Home notes") to Butler.  Butler went into receivership, and the receiver transferred the loans and the forbearance agreement to PU Bank.  Mountain Home defaulted.  PU Bank foreclosed on the mortgage securing two of the notes.  After holding a foreclosure sale, PU Bank asserted a deficiency of $687,997 in unpaid

principal, $85,001 in accrued interest, $4,737 in late fees, and $87,594 in collection costs, as of August 2011.

To collect that deficiency, PU Bank sued Mountain Home, Stevens, the F/F defendants, and the Williams defendants.  While its claims were pending, PU Bank entered into a non-recourse loan purchase agreement with Bad Paper under which Bad Paper paid PU Bank $989,081.13 for all of its right, title, and interest in the Mountain Home notes and the forbearance agreement.  See Pl.'s Mot. Summ. J., Ex. E (doc. no. 48-6), at 2-3.  The agreement between PU Bank and Bad Paper was executed, for Bad Paper, by Christopher Blake Williams, under the title "Managing Member."  See id. at 5.

The F/F defendants allege, on information and belief, that Christopher Williams is the son of the Williams defendants, and they have produced evidence that Bad Paper has the same street address as IDC Construction, LLC, of which Gary Williams is a managing member, see Defs.' Obj. to Summ. J., Exs. A & B (doc. nos. 57-1 & 57-2).  In an order dated June 13, 2012, the court granted PU Bank's motion to substitute Bad Paper for itself as the plaintiff in this case.  The Williams defendants assented to PU Bank's motion, and none of the other defendants objected.

All seven defendants were once represented by Attorneys Paul Kfoury and Conrad Cascadden.  Several days after PU Bank moved to have Bad Paper take its place as plaintiff, defendants

3

moved, successfully, for the withdrawal of Attorneys Kfoury and
Cascadden as counsel for the Williams defendants.  Approximately
two months later, Attorneys Kfoury and Cascadden moved to
withdraw as counsel for the remaining five defendants, citing
"[a] conflict [that had] arisen given the substitution of the
party plaintiff."  Mot. for Leave to Withdraw (doc. no. 36) ¶ 1.

### Discussion

Bad Paper filed its motion for summary judgment on October
2, 2012.  Thereafter, it assented to approximately five motions
to extend the F/F defendants' deadline for responding.
Ultimately, the F/F defendants responded to Bad Paper's summary-
judgment motion by simultaneously filing: (1) an objection to
summary judgment; (2) a motion for leave to file a supplemental
answer that includes additional affirmative defenses and two new
cross/counterclaims;[2] and (3) a Rule 56(d) motion asking for time
to conduct further discovery.

The F/F defendants begin the argument section of their
objection to summary judgment with this:

> The Flanders and Finch defendants intend to
> supplement their Answer to raise the following
> affirmative defenses, counter and cross claims that
> will either raise genuine issues of material fact in

---

[2] The court uses this somewhat unusual term to describe the
new claims the F/F defendants propose to assert because each of
them is targeted at plaintiff Bad Paper and at least one of the
other defendants in this case.

dispute or invoke issues of law such that summary
judgment must be denied.[3]

Defs.' Obj. to Summ. J. (doc. no. 57) ¶ 35.  They conclude by
asking the court to:

> Deny Bad Paper's Motion for Summary Judgment; [or]
>
> In the alternative, defer ruling while the Flanders
> and Finch Defendants are permitted to conduct limited
> discovery under [Rule] 56(d) with which to supplement
> this objection.

Id. at 9-10.  Just as the F/F defendants' objection to summary
judgment cross references their motion to supplement and their
Rule 56(d) motion, so too does their Rule 56(d) motion
incorporate, by reference, the facts and arguments in their
objection to summary judgment and their motion to supplement.
See Defs.' Mot. to Allow Discovery (doc. no. 59) ¶ 2.

At the very least, the unconventional procedural posture
created by the F/F defendants' simultaneous filings makes it
somewhat difficult to discern the proper path through the three
motions now before the court.  While acknowledging that there
may be more than one reasonable plan of attack, the court begins
with the motion to supplement.  That motion invokes the F/F
defendants' theory that Bad Paper is an alter ego of the
Williams defendants.  Not only do the F/F defendants base their

---

[3] It is not at all clear how a newly introduced affirmative
defense, counterclaim, or crossclaim would create a genuine
issue of material fact for purposes of defeating summary
judgment.

motion to supplement on their alter-ego theory, they seek
information to support that theory in their Rule 56(d) motion,
and they rely on that theory as the basis for their objection to
summary judgment.  Thus, as it rules on the motion to
supplement, the court will also be taking a step toward
resolving the other two pending motions.

### A. Motion to Supplement

Under Rule 15(d) of the Federal Rules of Civil Procedure
("Federal Rules"), the F/F defendants move to supplement their
answer to add several affirmative defenses as well as two
cross/counterclaims.  In its objection, Bad Paper argues that
the F/F defendants' motion should be evaluated and denied under
the "good cause" standard of Rule 16(b), but would also fail
under the more liberal standard of Rule 15(a)(2).  The Williams
defendants have not weighed in on the F/F defendants' motion.
The court agrees with Bad Paper that the motion to supplement
should be denied.

With regard to supplemental pleadings, the Federal Rules
provide, in pertinent part, that

> [o]n motion and reasonable notice, the court may, on
> just terms, permit a party to serve a supplemental
> pleading setting out any transaction, occurrence, or
> event that happened after the date of the pleading to
> be supplemented.

Fed. R. Civ. P. 15(d).  "Courts, including this one, generally
assess motions to supplement pleadings under the same standard
applicable to motions to amend."  Mueller Co. v. U.S. Pipe &
Foundry Co., 351 F. Supp. 2d 1, 2 (D.N.H. 2005) (citations
omitted); see also 3 James Wm. Moore et al., Moore's Federal
Practice § 15.30, at 15-133 (3d ed. 2012) ("Generally, the
standard used by courts in deciding to grant or deny leave to
supplement is the same standard used in deciding whether to
grant or deny leave to amend.").  Thus, "[t]he denial of a
proposed supplement on the basis of futility is . . . proper."
Mueller, 351 F. Supp. 2d at 2 (citing Glatt v. Chi. Park Dist.,
87 F.3d 190, 194 (7th Cir. 1996); Sheppard v. River Valley
Fitness One, L.P., No. Civ. 00-111-M, 2002 WL 197976, at *6
(D.N.H. Jan. 24, 2002)).  "In assessing futility, the . . .
court must apply the standard which applies to motions to
dismiss under Fed. R. Civ. P. 12(b)(6)."  Adorno v. Crowley
Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006) (citing
Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir.
1996)).  To survive a Rule 12(b)(6) motion, a complaint "must
contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'"  González-
Maldonado v. MMM Healthcare, Inc., 693 F.3d 244, 247 (1st Cir.
2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009);
citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The court begins with the F/F defendants' proposed affirmative defenses and then turns to the cross/counterclaims they seek to assert.

### 1. Affirmative Defenses

"A defendant may supplement an answer with new or additional defenses, including affirmative defenses, based on after-occurring events."  3 Moore, supra, § 15.30, at 15-131 (footnote and citation omitted).  Here, the requisite after-occurring event is Bad Paper's acquisition of the Mountain Home notes from PU Bank.  Based upon the F/F defendants' proposed supplemental answer, see doc. no. 58-7 ¶¶ 58-53, and the characterization of their proposed affirmative defenses in their objection to summary judgment, the court understands the F/F defendants to be arguing that: (1) Bad Paper is the alter ego of the Williams defendants; (2) by purchasing the Mountain Home notes from PU Bank, through the subterfuge of Bad Paper, the Williams defendants actually paid off the notes; and (3) because they paid off the notes, neither they nor Bad Paper may maintain an action to collect on them.  In other words, the F/F defendants contend that PU Bank's claim against them was extinguished once the Williams defendants, through Bad Paper, paid off the Mountain Home notes.

There is solid legal footing for the proposition that a co-maker of a note cannot pay it off and then sue his or her co-

8

makers on that same note.  See, e.g., Awed v. Marsico, 538
N.E.2d 43, 45 (Mass. App. Ct. 1989) (ruling that payment of note
by one maker discharged liability of all makers, but left maker
who paid with "an action for equitable contribution [against
other makers] toward the amount he paid on the note"); see also
Rockingham Bank v. Claggett, 29 N.H. 292, 298 (1854) ("There is
no doubt of the correctness of the defendant's position, that a
note once paid ceases to be negotiable.").  Thus, if the
Williams defendants had engaged in a transaction with PU bank
that satisfied PU Bank's demands on the notes, then they would
be precluded from suing the remaining makers on those notes (but
would have an action for equitable contribution).  On the other
hand, it is beyond dispute that if PU Bank had sold the Mountain
Home notes to a legal stranger to the makers of those notes,
that new holder would be entitled to maintain PU Bank's action
on the notes against all of their makers, i.e., the seven
defendants in this case.

Things become less certain, however, when it comes to the
alter-ego theory on which the F/F defendants rely to establish
that Bad Paper shared the Williams defendants' ability to
extinguish the Mountain Home notes by paying them off.  The
problem is that the F/F defendants have not identified any legal
theory under which it would be permissible to disregard the
organizational form of Bad Paper.  Simply using the words "alter

ego," "shell," and "straw" is not a legal theory.  In a related
area of the law, the New Hampshire Supreme Court has stated that
it "will pierce the corporate veil and assess individual
liability . . . where the corporate identity has been used to
promote an injustice or fraud."  LaMontagne Builders, Inc. v.
Bowman Brook Purchase Grp., 150 N.H. 270, 275 (2003) (citing
Terren v. Butler, 134 N.H. 635, 639 (1991)).  And, in a recent
opinion, the court assumed, without deciding, that the corporate
veil-piercing doctrine also applied to limited liability
companies.  See Mbahaba v. Morgan, 163 N.H. 561, 568 (2012).

But the F/F defendants do not suggest that the Williams
defendants hid behind Bad Paper to engage in activities that
created liabilities they hoped to avoid.  The liabilities in
this case, i.e., the makers' obligations on the Mountain Home
notes, existed long before Bad Paper was organized.  Nor do the
F/F defendants suggest that they have a claim against Bad Paper
but could be left holding the bag because the Williams
defendants treated Bad Paper's assets as their own and siphoned
them off.  To the contrary, the F/F defendants allege that the
Williams defendants poured assets into Bad Paper.  In short, the
facts of this case take it far beyond the heartland of
traditional veil-piercing, and the F/F defendants cite no case
from New Hampshire, or anywhere else, in which a court has
disregarded the organizational form of a limited liability

company under circumstances similar to those presented by this
case.

Moving from the mechanics of veil-piercing to the reasons
for taking that step, New Hampshire courts will pierce the
corporate veil "where the corporate identity has been used to
promote an injustice or fraud." LaMontagne Builders, 150 N.H.
at 275.  The F/F defendants have not paid anything to Bad Paper,
so plainly, they have not been the victims of any injustice or
fraud resulting from Bad Paper's identity as an LLC.  And, given
their own citation of a U.C.C. provision governing contribution
among co-makers of a negotiable instrument who are jointly and
severally liable, see N.H. Rev. Stat. Ann. ("RSA") § 382-A:3-
116(b), it is difficult to see any basis for a claim by the F/F
defendants that they could, in the future, be victimized Bad
Paper's identity as an LLC.  Thus, even if the unusual form of
veil-piercing the F/F defendants invoke were the law of New
Hampshire, which they have not demonstrated, it would seem to
have no application to this case.

Because the F/F defendants have identified no legal basis
for treating Bad Paper as a maker of the Mountain Home notes,
the affirmative defenses they propose to add to their answer do
not state a defense that is plausible on its face.  Accordingly,
addition of those defenses to their answer would be futile.  See
Adorno, 443 F.3d at 126.

11

## 2. Cross/Counterclaims

The F/F defendants' proposed cross/counterclaims suffer from the same infirmity as the affirmative defenses they propose to assert.  As a preliminary matter, both of those claims, like the proposed affirmative defenses, appear to assume the success of what the F/F defendants see as an attempt by the Williams defendants to use Bad Paper to evade their liability on the Mountain Home notes.  If, indeed, the Williams defendants are attempting such a gambit, their success is not a foregone conclusion, for reasons developed more fully below.  But, more importantly, we will not know whether their purported stratagem is a success, and the F/F defendants have been harmed, until this case has come to a conclusion.  That said, the court turns to each of the proposed cross/counterclaims.

### a. Count I

In Count I, the F/F defendants assert a claim against Gary Williams ("Mr. Williams") and his alleged alter ego, Bad Paper, for breach of fiduciary duty.[4]  According to the F/F defendants, Mr. Williams "engage[d] in self-dealing for his personal financial benefit to the detriment of Mountain Home," Proposed Supp. Answer (doc. no. 58-7) ¶ 78, and did so by: (1) using Bad

---

[4] The F/F defendants do not assert that Bad Paper owed them a fiduciary duty.  Rather, they contend that such a duty was owed them by Mr. Williams and that Bad Paper, as Mr. Williams' alter ego, is also liable for his breach of duty.

Paper, to extinguish the Mountain Home notes; and (2) seeking "to collect from Mountain Home and his co-members on the Notes that he knew or should have known were extinguished," id. ¶ 82. Based upon those allegations, the F/F defendants claim to "have been damaged by Gary Williams' breach of fiduciary duty and self-dealing and continue to be damage[d] as they defend against claims on the extinguished notes." Id. ¶ 86.

As the court has already explained, the F/F defendants have not established a legal basis for their alter-ego theory. Beyond that, they have not adequately alleged any damages resulting from Mr. Williams' alleged self-dealing. They have not alleged that they have paid Bad Paper anything on the Mountain Home notes. As to their claim to be suffering continuing damages as a result of defending against claims on the notes, it is worth recalling that before Bad Paper purchased the Mountain Home notes from PU Bank, the F/F defendants were defending against PU Bank's claims on those notes. Thus the F/F defendants do not allege any conduct by Mr. Williams put them in a worse position vis à vis the Mountain Home notes than the position they were already in. Going further back in time, from the moment they executed the Mountain Home notes, the F/F defendants were jointly and severally liable on them. In other words, facing joint and several liability on the Mountain Home notes, which is where the F/F defendants are now, can hardly

13

count as an injury; that is what they signed up for in June of 2007 when they made the first two of the Mountain Home notes and gave them to Butler.

Because the F/F defendants' alter-ego theory is without any legal basis, and because they have identified no damages resulting from Mr. Williams' alleged breach of duty, it would be futile for them to supplement their answer with the claim asserted in Count I.

### b. Count II

So, too, with Count II, in which the F/F defendants seek contribution from Bad Paper, the Williams defendants, and Stevens.  The U.C.C. does establish a right of contribution, but that right runs in favor of "a party having joint and several liability who pays the instrument," RSA 382-A:3-116 (emphasis added).  That suggests that a claim for contribution arises only after the maker asserting the claim has paid the instrument. Here, the F/F defendants do not allege that they have paid off the note.  Thus, they are in no position to assert a claim for contribution, which would make it futile to supplement their answer with the claim asserted in Count II.

### 3. Summary

Neither the affirmative defenses the F/F defendants propose to add to their answer nor the two cross/counterclaims they seek

14

to assert state a plausible claim to relief.  Therefore, it
would be futile for them to add those defenses and claims to
their answer.  See Adorno, 443 F.3d at 126.  Accordingly, the
F/F defendants' motion to supplement their answer must be
denied.  See Mueller, 351 F. Supp. 2d at 2.

### B. Rule 56(d) Motion

In the affidavit supporting the F/F defendants' motion for
permission to conduct limited discovery, pursuant to Rule 56(d),
their counsel states:

> On or about January 23, 2013, I attempted to
> obtain information regarding the transaction involving
> Bad Paper and the negotiations between Gary and Gina
> Williams and People's United Bank that led to the pay-
> off of the notes in question by contacting counsel of
> record for People's United Bank, Attorney Daniel P.
> Luker.[5]
>
> He indicated that they would not provide any
> information voluntarily.
>
> Based on my discussion with Attorney Luker, I
> concluded that in order to get such information it
> would require a subpoena or other legal process.

Defs.' Mot. to Allow Discovery, Ex. A, Hage Aff. (doc. no. 59-1)

¶¶ 2-4.  The F/F defendants frame the argument in support of
their Rule 56(d) motion in the following way:

---

[5] Attorney Hage's reference to "the pay off of the notes" is
problematic.  PU Bank's sale of the Butler loans to Bad Paper
resulted in a payoff of the Mountain Home notes only if Bad
Paper may be treated as a maker of those notes.  But, as the
court has already explained, the F/F defendants' alter-ego
theory is without legal support.

> [T]he Flanders and Finch Defendants contend the
> evidence will show that Bad Paper is an alter-ego of
> the Williams Defendants, which would preclude Bad
> Paper from seeking, either in whole or in part, the
> relief originally sought by People's United Bank and
> the relief that they now seek in their Motion for
> Summary Judgment.
>
> Specifically, as more fully described in the
> Motion to Supplement Answer and the Objection to
> Summary Judgment, the Flanders and Finch Defendants
> contend that . . . the evidence will show that the
> Williams Defendants formed Bad Paper as a shell for
> the express purpose of allowing the Williams
> Defendants to purchase the Notes, using Bad Paper as a
> straw, in an effort to shield themselves from their
> individual liability on the Notes, including their
> duty to share in contribution with all of the other
> co-makers and to avoid the Notes from being
> extinguished, which would preclude them from suing on
> the Notes and seeking to hold the remaining defendants
> jointly and severally liable for the full [amount of]
> the remaining debt owed.

Defs.' Mot. to Allow Discovery (doc. no. 59) ¶¶ 3-4.

Bad Paper objects on multiple grounds, including the F/F defendants' failure to: (1) ask the court, unconditionally, to refrain from ruling on the pending summary judgment motion; (2) diligently pursue the discovery they now seek before the summary-judgment motion was filed; and (3) adequately explain how the information they want would provide a basis for denying summary judgment.  Turning to Bad Paper's first objection, it is well established that "[o]rdinarily, a party 'may not attempt to meet a summary judgment challenge head-on but fall back on Rule [56(d)] if its first effort is unsuccessful.'"  Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 23 (1st Cir.

16

1999) (quoting <u>C.B. Trucking, Inc. v. Waste Mgmt., Inc.</u>, 137
F.3d 41, 44 (1st Cir. 1998)).  Because the F/F defendants ask
the court to deny summary judgment or, in the alternative, to
give them relief under Rule 56(d), their Rule 56(d) motion would
seem to be subject to denial under the rule stated in <u>Rodriguez-
Cuervos</u>.  On the other hand, <u>Rodriguez-Cuervos</u> speaks of
"attempt[ing] to meet a summary judgment challenge head-on," <u>id.</u>
at 44.  To the extent that the F/F defendants rely upon the
affirmative defenses and cross/counterclaims in their proposed
supplemental answer to provide the factual or legal basis for
their objection to summary judgment, rather than basing their
objection on the undisputed factual record as it currently
stands, one could reasonably argue that they have come at Bad
Paper's summary-judgment motion from an angle, rather than head-
on.  However, even if <u>Rodriguez-Cuervos</u> does not compel denial
of the F/F defendants' Rule 56(d) motion, Bad Paper's third
objection is also meritorious.

The Federal Rules provide that "[i]f a nonmovant shows by
affidavit or declaration that, for specified reasons, it cannot
present <u>facts</u> essential to justify its opposition, the court may
. . . allow time . . . to take discovery."  Fed. R. Civ. P.
56(d) (emphasis added).  As Judge Selya recently explained:

> A party opposing summary judgment who wishes to invoke
> Rule 56(d) must act diligently and proffer to the
> trial court an affidavit or other authoritative

17

> submission that "(i) explains his or her current
> inability to adduce the facts essential to filing an
> opposition, (ii) provides a plausible basis for
> believing that the sought-after facts can be assembled
> within a reasonable time, and (iii) indicates how
> those facts would influence the outcome of the pending
> summary judgment motion."

Jones v. Secord, 684 F.3d 1, 6 (1st Cir. 2012) (quoting Vélez v.

Awning Windows, Inc., 375 F.3d 35, 40 (1st Cir. 2004)).

Regarding the third component of a meritorious Rule 56(d)

motion, "[s]pecific facts sought must be identified."  11 Moore,

supra, § 56.102[2], at 56-272 (3d ed. 2012) (footnote and

citations omitted, emphasis added).  In addition, "[a] basic

tenant of Rule [56(d)] practice is that the party seeking

discovery must explain how the facts, if collected, 'will

suffice to defeat the pending summary judgment motion.'"  Ass'n

de Periodistas de P.R. v. Mueller, 680 F.3d 70, 77 (1st Cir.

2012) (quoting Mir-Yépez v. Banco Popular de P.R., 560 F.3d 14,

16 (1st Cir. 2009); citing Rivera-Torres v. Rey-Hernández, 502

F.3d 7, 10 (1st Cir. 2007)).  The F/F defendants have failed to

identify the specific facts they seek or explain how the

information it seeks, if collected, would suffice to defeat Bad

Paper's summary-judgment motion.

To begin, "information regarding the transaction involving

Bad Paper [and PU Bank] and the negotiations between Gary and

Gina Williams and People's United Bank that led to the pay-off

of the notes in question," Hage Aff. (doc. no. 59-1) ¶ 2, which

is how the F/F defendants characterize what they are after, is not a specific fact or facts, see 11 Moore, supra, § 56.102[2], at 56-272.  Rather, Attorney Hage's description of what he sought from PU Bank is more akin to "speculation that there is some relevant evidence not yet discovered [that] will never suffice" to support a Rule 56(d) motion.  Id. at 56-272 to 56-273 (footnote and citations omitted).

Instead of identifying facts they seek to discover, the F/F defendants, in their own words, seek to discover that Bad Paper is an "alter ego," a "shell," or a "straw."  See Defs.' Mot. to Allow Discovery (doc. no. 59) ¶¶ 3-4.  Those are legal conclusions, not facts, and the F/F defendants do not specify the facts they need to support those legal conclusions. However, even if the court were to assume that the F/F defendants had specified facts such as, for example, the membership of Bad Paper or the source of the funds that Bad Paper used to purchase the Butler loans from PU Bank, the F/F defendants cite no legal authority for the proposition that a limited liability company is the alter ego of its members or those who fund it.  Finally, as the court has already explained in the context of the F/F defendants' motion to supplement their answer, they have provided no legal support for treating Bad Paper as a maker of the Mountain Home notes under the alter-ego theory upon which they rely.

19

Because the F/F defendants identify neither the facts they want to collect nor a legal theory under which the information they seek would give them a defense to summary judgment, their Rule 56(d) motion is denied.

### C. Bad Paper's Motion for Summary Judgment

Having determined that the F/F defendants are not entitled to relief under Rule 56(d), the court turns to Bad Paper's summary-judgment motion.  "Summary judgment is warranted where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  McGair v. Am. Bankers Ins. Co. of Fla., 693 F.3d 94, 99 (1st Cir. 2012) (quoting Fed. R. Civ. P. 56(a); citing Rosciti v. Ins. Co. of Penn., 659 F.3d 92, 96 (1st Cir. 2011)).

Under the common law of New Hampshire, "[a] breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract."  Axenics, Inc. v. Turner Constr. Co., ___ N.H. ___, ___, 62 A.3d 754, 763 (2013) (quoting Lassonde v. Stanton, 157 N.H. 582, 588 (2008)).  It is undisputed that all seven defendants made the Mountain Home notes, and that they have failed to fully perform their obligations under those notes.

The F/F defendants' only argument against summary judgment is their contention that Bad Paper, due to its status as the

Williams defendants' alter ego, is legally precluded from suing on the Mountain Home notes because they ceased to be negotiable instruments once they were acquired by Bad Paper.  As the court has explained in its rulings on the F/F defendants' pending motions, they have failed to articulate a legal basis for disregarding Bad Paper's status as a limited liability company and treating Bad Paper's acquisition of the Mountain Home notes as a transaction that extinguished the notes and discharged the liability of all the other makers.  Accordingly, Bad Paper is entitled to the relief it seeks in its summary-judgment motion, i.e., default judgment against Mountain Home and Stevens, and judgment as a matter of law against the F/F defendants, in an amount equal to the unpaid principal and interest that is owing on the Mountain Home notes, with liability to run jointly and severally.

### D. The Williams Defendants

The court's resolution of Bad Paper's summary-judgment motion leaves one rather significant loose end.  In the prayer for relief in its summary-judgment motion, Bad Paper "requests that the Court grant summary judgment in its favor on its breach of contract claims against all defendants except Gary and Gina Williams, in the amount of $1,014,306.19."  Pl.'s Mot. Summ. J. (doc. no. 48) 2 (emphasis added).  In support of its motion, Bad

21

Paper has submitted an affidavit from Christopher Williams in which he stated that "Bad Paper, LLC has reached a satisfactory agreement with Gary and Gina Williams, and does not seek to recover any additional amounts from them."  Id., Ex. F (doc. no. 48-7) ¶ 3.  The F/F defendants' objection to summary judgment is based entirely on their concern that if the Williams defendants used Bad Paper to purchase the Mountain Home notes, and if Bad Paper is able to recoup the full amount it paid for the Mountain Home notes from makers other than the Williams defendants, then the Williams defendants will be able to completely avoid their liability on the notes.  That concern is not difficult to understand, given that Bad Paper now seeks judgment against all but the Williams defendants in an amount greater than the amount it paid PU Bank for the Mountain Home notes.

Bad Paper says that it "has reached a satisfactory agreement with Gary and Gina Williams, and does not seek to recover any additional amounts from them," Pl.'s Mem. of Law (doc. no. 48-1), 3 n.1.  But, it has not taken any formal action to dismiss the Williams defendants from this case.  Thus, Bad Paper still has pending claims for breach of contract against the Williams defendants.  The court is obligated to adjudicate those claims, and they remain on track for trial.  At the same time, the court recognizes that on the merits, Bad Paper's argument for summary judgment against the F/F defendants applies

with equal force to the Williams defendants.  Accordingly, the Williams defendants are ordered to show cause why the court should not grant Bad Paper summary judgment against them, sua sponte, for the same reasons that justify judgment against the other five defendants.

### E. The Path Forward

In light of the foregoing order, the court makes the following observations for the guidance of the parties as they determine how to proceed with this case.  It seems all but certain that this case would have ended long ago, with judgment against all seven defendants, if PU Bank had remained the holder of the notes.  It seems relatively clear that even with Bad Paper as the holder of the Mountain Home notes, the case would be over, except for the calculation of damages, if Bad Paper had dismissed the Williams defendants.  That said, the court can envision several responses to its show-cause order.  The Williams defendants could prevail upon Bad Paper to dismiss its claims against them.  Or, Bad Paper could proceed to judgment against the Williams defendants and then choose not to collect from them.

Without fully researching the issue, it seems unlikely that the Williams defendants would be able to escape liability under either of the two scenarios outlined above.  Regarding dismissal

of the Williams defendants from this action, "[d]ischarge of one
party having joint and several liability by a person entitled to
enforce the instrument does not affect the right under
subsection (b) of a party having the same joint and several
liability to receive contribution from the party discharged."
RSA 382-A:3-116(c).  Alternatively, if Bad Paper were to recover
its judgment by collecting from defendants other than the
Williams defendants, the U.C.C. provides that "[e]xcept as
provided in Section 3-419(e) or by agreement of the affected
parties, a party having joint and several liability who pays the
instrument is entitled to receive from any party having the same
joint and several liability contribution in accordance with
applicable law."  RSA 382-A:3-116(b).  Bad Paper may be
satisfied with the agreement it reached with the Williams
defendants, but it has identified no legal authority, and the
court is aware of none, for the proposition that Bad Paper could
make an agreement with the Williams defendants that would also
nullify the Williams defendants' agreement to be jointly and
severally liable with the other makers of the Mountain Home
notes.

     Regardless of whether Bad Paper is an alter ego of the
Williams defendants, and notwithstanding any approach Bad Paper
might take to dealing with the Williams defendants in this case,
it would appear that, as a practical matter, all roads lead to

proportionate liability for the makers of the Mountain Home
notes, including the Williams defendants.  See Awed, 538 N.E.2d
at 45; RSA 382-A:3-116(b) & (c).  For their part, the F/F
defendants recognize their obligation to pay three sevenths of
whatever is owed on the Mountain Home notes.  What they seek to
avoid is being stuck with the two sevenths for which they
believe the Williams defendants to be liable.

Also lurking below the surface is the matter of who is left
holding the claim for contribution against Mountain Home and
Stevens.  Had the Williams defendants paid the notes, they would
have a claim for equitable contribution against the other five
makers.  See Awed, 538 N.E.2d at 45.  If Bad Paper collects in
full from the F/F defendants, then they will have a statutory
claim for contribution against the other four makers.  See RSA
382-A:116(b).  Obviously, a maker who pays the note faces the
risk that one or more of his or her co-makers is unable to pay a
claim for contribution.  Here, it may well be that what the F/F
defendants are struggling to avoid is getting stuck with the
liabilities of Mountain Home and Stevens on the Mountain Home
notes.  But, whatever the case may be, because neither equitable
contribution nor statutory contribution is available until a
maker has paid the note, it would seem that no contribution
action could commence until this case has concluded.  And, based
upon the citizenship of the parties involved, it seems likely

that any contribution action would have to be brought in another
forum.

At this point, the parties may wish to consider whether it
is worth their while to continue seeking a judicial resolution
of this dispute.  Given the seeming inevitability of
proportionate liability, and the likelihood that the F/F
defendants will need to start over, in another forum, to
litigate a contribution claim, the parties' time and energy
might be better spent on crafting a satisfactory resolution on
their own.

### Conclusion

For the reasons described above, Bad Paper's motion for
summary judgment, document no. 48, construed as a motion for
default judgment as to defendants Mountain Home and Stevens, is
granted.  The F/F defendants' motion for discovery under Rule
56(d), document no. 59, and their motion to supplement their
answer, document no. 58, are both denied.  Finally, the Williams
defendants shall have twenty days from the date of this order to
show cause why the court should not grant summary judgment to
Bad Paper on its claims against them.

Here is where things stand.  Mountain Home, Stevens, and
the F/F defendants are all liable to Bad Paper, jointly and
severally, on the Mountain Home notes.  The Williams defendants

have been ordered to show cause why the court should not grant

Bad Paper summary judgment against them, as well.  Presuming

that they will be unable to do so, all that would remain for

resolution in this case is the exact amount of defendants'

liability to Bad Paper.  This case is scheduled for a bench

trial on June 18, 2013.  That trial could easily be converted

into a hearing on damages.  On the other hand, the amount of Bad

Paper's damages would appear to be simple to calculate and not

subject to much dispute.  If the parties could stipulate to Bad

Paper's damages, so much the better.

      SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

April 30, 2013

cc:  Biron L. Bedard, Esq.
     Conrad WP Cascadden, Esq.
     Kathleen A. Davidson, Esq.
     Jamie N. Hage, Esq.
     Shawn J. Sullivan, Esq.